UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | 3:21-CR-00003-1 |
| | § | |
| V. | § | 10:58 A.M. TO 11:36 A.M. |
| | § | |
| RICHARD BLAKE HOWARD | § | OCTOBER 26, 2022 |

HEARING ON SENTENCING
BEFORE THE HONORABLE JEFFREY V. BROWN
Volume 1 of 1 Volume

**APPEARANCES:**

**FOR THE UNITED STATES OF AMERICA:**
Ms. Kimberly Ann Bulger Leo
United States Attorney's Office
1000 Louisiana
Suite 2300
Houston, Texas 77002
(713) 567-9000

**FOR THE DEFENDANT RICHARD BLAKE HOWARD:**
Ms. Heather Michelle Hughes
Federal Public Defender
440 Louisiana Street
Suite 1350
Houston, Texas 77002
(713) 718-4600

**ALSO IN ATTENDANCE:**
Probation Officer Nicole Pustejovsky
Probation Officer Adrian Lara
Probation Officer Zhanelle Spikes
Mr. Richard Blake Howard

Court Reporter:
Laura Wells, RPR, RMR, CRR, RDR
601 Rosenberg, Suite 615
Galveston, Texas 77550

Proceedings recorded by mechanical stenography.
Transcript produced by computer-assisted transcription.

**PROCEEDINGS**

**(Call to order of the Court.)**

THE COURT:  Good morning.  You may take your seats.  The next case on the Court's docket is in Cause Number 3:21-CR-3, United States of America v. Richard Blake Howard.

Will the attorneys make their appearances, please.

MS. LEO:  Good morning, Your Honor.  Kimberly Leo on behalf of the United States.

THE COURT:  Good morning, Ms. Leo.

MS. HUGHES:  Good morning, Your Honor.  Heather Hughes for Mr. Richard Howard.

THE COURT:  Good morning to you, too, Ms. Hughes.

Let the record reflect that the defendant is also in the courtroom, as is probation.

This is a sentencing hearing.  I want to briefly describe the Court's sentencing procedures.  The Supreme Court held in the *United States v. Booker* that the United States sentencing guidelines are advisory, not mandatory, for judges.  *Booker* requires the sentencing court to consider guideline ranges but permits the Court to tailor the sentence in light of other statutory concerns as well.

In exercising its sentencing discretion the Court will rely on the factors set out in Section 3553(a) to fashion an appropriate sentence in this case and to achieve the

congressionally-mandated purposes of sentencing as set forth in the Sentencing Reform Act of 1984.  The Court will endeavor to faithfully apply the directives within the guidelines to determine the total offense level and criminal history category under the guidelines, and then the Court will exercise its discretion to determine the appropriate sentence.  In so doing, the Court will give considerable weight to the sentencing range calculated under the guidelines.

Any comments that I make during the sentencing are not to be construed as an indication that I in fact believe that the guidelines are mandatory or that they constrain the Court's ultimate sentencing discretion.

In preparation for this morning's hearing I have reviewed the presentence investigation report; the addendum and attachments to that report; the confidential sentencing recommendation provided to me by probation; the defendant's statement of no objection to the PSR; the defendant's -- the defendant's sentencing memorandum, including a letter from his grandmother Caroline Howard; and the government's statement of no objections to the PSR.

Ms. Leo, anything else to submit to the Court this morning?

MS. LEO:  No, Your Honor.

*Laura Wells, RPR, RMR, CRR, RDR*

THE COURT:  Ms. Hughes, anything else on behalf of the defense?

MS. HUGHES:  No, Your Honor.

THE COURT:  Then there being no objections to the -- no objections to the PSR, the Court adopts the PSR as amended by the addendum.

These are the Court's final guidelines, findings and legal conclusions.  The total offense level is 34.  The criminal history category is one.  This produces a guideline range of 151 to 188 months imprisonment, a supervised release term of five years to life, a fine of between $35,000 and $350,000, mandatory restitution in an amount to be determined and a mandatory special assessment of $100 per count.

Ms. Leo, what is the government's position on sentencing?

MS. LEO:  Your Honor, the government is asking for a guideline sentence specifically at the high end, which would be the 188 months.  We believe that that is appropriate under the 3553(a) factors.

Specifically, Your Honor, under the 3553(a) factors, looking at the defendant's history and characteristics, the defendant is clearly a danger to the community; and we believe that a guideline sentence at the high end would be appropriate.

First and foremost, the defendant has a very serious sexual interest in children which makes him a danger to the community.

Your Honor, this case started out back in December of -- excuse me -- December of 2018 when there was a cyber tip for the defendant when he was uploading child pornography to a social media site.  At that point in time, agents started their investigation and, ultimately, it led to them obtaining a search warrant for the defendant's residence in March of -- excuse me -- yes, it was March of 2019.

At the time that agents executed that search warrant they came upon the defendant and they were able to not only look at his forensic devices at his residence but he also gave an admission which indicated not only did he use the Dropbox account that led to the first cyber tip but he also admitted to a different Dropbox account that he was utilizing for child pornography.

When agents looked through those accounts, as well as the laptop, they were able to come up with 973 images and 1,200 videos of child pornography, which is quite a large collection that this defendant had.

And within that collection, which also makes him a danger, not only did he have regular child pornography but he did have child pornography that consisted of infants

and toddlers, bondage, bestiality and sadomasochistic conduct.  Your Honor, he also had over 143 videos that were over five minutes in length, which also shows that he is a danger.

What happened next, Your Honor, is not only did the agents execute the search warrant and they obtained all of his devices and they did not arrest him at the time because at that point they still needed to further their investigation and because there were other things that were happening with other cases that were more pressing, they left the defendant out.

But that did not deter the defendant.  He continued to obtain child pornography and view child pornography and trade child pornography.  And within seven months he was back on Skype, Yahoo and Google trading child pornography with other individuals, which also shows that he has this sexual interest in children that cannot be deterred, which makes him a danger to the community.

And, Your Honor, the other thing that shows that he is a danger is not only his collection and the conduct that he couldn't stop himself and he was back out there doing this again even after agents executed that search warrant seven months later is the fact that the admissions he made to law enforcement, both when the search warrant was executed originally in March of 2019 and then when agents

executed a second search warrant in February of 2021, when he was ultimately arrested, he told the agents not only was he collecting child pornography, he also admitted to other conduct where he would take pictures of other women, candid shots, if you will, of their buttocks when he would see them.

He also admitted that he had contacted a family member and basically asked her to tell him the color of her underwear and of her bra and if she didn't he was going to rape her 14-year-old daughter.

He made these admissions, Your Honor, which just shows that he is a danger not just because of his collection of the child pornography but of this other conduct that he is doing.

Further, Your Honor, when agents executed that search warrant on the second time in February of 2021, when they executed it they also found this collection that the defendant had of young girls' underwear.  And when they questioned him about it, he admitted that he had collected this underwear, that he had this panty fetish; and he collected this underwear from when he would baby-sit children, he would collect their underwear from hampers and sometimes he would sneak into his neighbor's house and steal her underwear.

And that, also, he had done it when he was a camp

counselor and he would steal underwear from, I guess, the different people that he was -- that he came in contact with, the children that he came in contact with at camp.

So, Your Honor, he has this behavior that he is admitting to when he is collecting underwear. He is taking pictures of women and these candid shots of their butts. He is collecting all this child pornography. He is not being deterred from the first time agents executed that search warrant at his residence.

And agents then, after the second search warrant when they were going through his collection of child pornography, they found some very disturbing chat communications where he was admitting or discussing the fact that he had touched a child. He discussed the fact that he wanted to have sex with a corpse. He discussed the fact that he wanted to kill a family member, all of these very disgusting and disturbing communications, which just shows that he is a danger, Your Honor. And that these are different factors that the government believes would warrant this -- a guideline sentence specifically at the high end.

Further, Your Honor, the other thing that agents found when they executed the second search warrant is they found these pictures that the defendant had taken of a child approximately about 10 or 11 years old outside. She is

dressed.  But then there is also a picture of the defendant and he is naked and it's a picture of him masturbating or him and his penis and he basically merges the two pictures and morphs them to create his own type of child pornography.

And so he is now taking it to the next level, Your Honor, and nothing seems to deter him.  And, Your Honor, because of that we do believe under the 3553(a) factors, specifically the nature of the offense and his characteristics, that that would warrant a high end of the guideline sentence.

Further, Your Honor, looking at another factor under 3553(a), as far as the just -- a need for just punishment in light of the seriousness of the offense, I know defense counsel had submitted a memorandum asking for a variance in this case for a below guideline sentence and, Your Honor, we don't believe, again, that that's appropriate, also, in light of the victims in this case.

Your Honor, there has been 94 identified series of victims in this particular case; and every time the defendant viewed and downloaded their images, their abuse is renewed over and over again.  And, Your Honor, it's especially heinous in the fact that he has been doing this for over a two-year period and especially the conduct and the collection that he had, which again includes

bestiality, sadomasochistic conduct, bondage, all of that, which is especially heinous.

In looking at how it impacts those particular victims, I just would like to read for a moment one of the victim impact statements, which is Document Number 35, and this is the victim impact statement from the Vicky series, which the defendant did have her images in his collection.

And, basically, what Vicky says is, "I live every day with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life and taking grotesque pleasure in them.  I am the victim of the worst kind of exploitation, child porn.

"Unlike other forms of exploitation, this one is never ending.  Every day people are trading and sharing videos of me as a little girl being raped in the most sadistic ways.  They don't know me, but they have seen every part of me.  They are being entertained by my shame and pain.

"My world came crashing down the day I learned that pictures of me being sexually abused have been circulated on the internet.  Since then, little has changed, except my understanding that the distribution of these pictures grows bigger and bigger by the day and there is nothing I can do about it.  The enormity of this has added to my grief and pain and given me a paranoia.

"I wonder if the people I know have seen these images.

I wonder if the men I pass in the grocery store have seen them.  I feel totally out of control.  They are trading around my trauma like treats at a party, and it feels like I'm being raped all over again by every one of them.

"It sickens me to the core, terrifies me, and makes me want to cry.  So many nights I have cried myself to sleep thinking of a stranger somewhere staring at their computer with images of a naked me on the screen.  I have nightmares about it often.

"I can never feel safe so long as my images are out there.  Every time they are downloaded, I am exploited again, my privacy is breached and I feel in danger again.  I fear that any of them may try to find me and do something to me."

Your Honor, this is just a portion of what this one victim feels like when she knows that individuals like the defendant have downloaded and have collected her images.

And, Your Honor, we believe that a guideline sentence would help in justifying and help in giving her some sort of justice for what has happened to her.  And we believe that a guideline sentence is appropriate, again, in this case.

Your Honor, also under the 3553(a) factors there is a need for adequate deterrence and, Your Honor, looking at the defendant's conduct, looking at what he did, not only

did he collect these images, he also traded them.  He sent and distributed images on two different -- in two different platforms.  He did it through his Google account, and he also did it through his Yahoo e-mail account.  So that's two different avenues where the defendant actually distributed those child pornography images.

And he also collected them not only through Skype but also through his Dropbox account.  So there is various different platforms that the defendant was utilizing in order to get his collection.

And furthermore, in regards to adequate deterrence, again, it's hard to deter someone who doesn't believe or can't be deterred.  And in this particular case, the fact that agents executed a warrant and took all of his devices, he was left with nothing; and yet, he found a way to use his grandmother's phone and to use his X-box to be able to continue this conduct.  And the agents showing up did not do anything to deter him.

So, therefore, Your Honor, we do believe that a guideline sentence, specifically at the high end, is justified and warranted and that would deter him in this particular case and that's why we are asking for the high end of the guidelines and we believe that that is appropriate under the 3553(a) factors.  Thank you.

*Laura Wells, RPR, RMR, CRR, RDR*

THE COURT:  Thank you, Ms. Leo.

Ms. Hughes, the defendant's position on sentencing.

MS. HUGHES:  Yes, Your Honor.  We would ask for a sentence at the low end of the guideline range or less, taking into account our request for a variance.

Going back to the beginning of the government's presentation, agents did come to his home and take devices and he then did go out and seek child pornography again. And he understands now, Your Honor, the seriousness of this conduct.

At the time, he did not.  He was a 25-year-old man living with his mother and grandmother.  He had been homeschooled his entire life since fourth grade.  He has never been able to hold a long-term job.  He did not have any structure in his life, Your Honor.

And he did have an interest in child pornography and did not have the tools to keep himself from continuing to seek it out because he himself was abused as a child; and from that, he has PTSD and mental health issues, Your Honor.  And because of those issues, that's where his interest in these materials stems from.

That is not an uncommon feature in someone who has an interest in child pornography that they have been abused themselves.  And, Your Honor, we understand the seriousness of his conduct.  The fact that he was taking

underwear and taking pictures, there is no excuse for that behavior.

However, Your Honor, when it goes to his chats with other people, Your Honor, those are fantasies; and they are clearly fantasies because there are no allegations that he -- from any child that he ever touched them inappropriately. There are no allegations from any family that he ever came and threatened their lives or anything of that matter. So they are disturbing fantasies; but they are thoughts and not actions, Your Honor.

And during his incarceration he has started to seek mental health treatment for the first time. We submitted to the Court a certificate showing he had completed the dialectical behavior therapy at FDC, the federal detention center, and that's the first time he has ever received treatment.

In 2016 it came to light that the man who had abused him for eight years when he was a child from ages 5 to 13 had also been abusing other family members. When that happened, that was the first time that his mom and his grandmother realized that the cousin had abused him and that he had suffered this trauma.

He did not have interactions with other children his own age because he was homeschooled; and because he endured that trauma, he did not go and seek out those

interactions.  So his sexual development was delayed and warped.

However, as a result of this case, he has been around peers for the first time, Your Honor, and that has come with its own set of adjustments and difficulties.  There have been two separate instances where he has been sexually harassed and then assaulted while at the FDC.  He still has a scar on his forehead to show that assault.

So he is someone who is going to have a very high level of difficulty at any facility because of his difficulty perhaps with social cues and understanding how to interact with other people.

However, he will continue to seek out mental health treatment.  I believe he is going to tell the Court some of what he has been doing to seek counseling.

The Court will also be imposing conditions to ensure that his prior actions do not reoccur.  He will never be allowed to be around children unsupervised.  He will never be a counselor at a summer camp again.

Any sentence that the Court imposes in this case is going to be incredibly lengthy, especially for someone as young as him and with such limited life experience.  And some of the factors that the government points to, such as the fact that he distributed and the number of images, the use of a computer, those are factors that are true in

every single case, Your Honor.

And as you have pointed out, many courts have recognized that the guidelines for child pornography are broken because the sentencing commission has not been able to update, Congress has not updated the laws regarding the enhancements and those now apply in almost every single case.

Such as, use of a computer happens in 95 percent of cases.  Possession of over 600 images happens in about 70 or 75 percent of cases.  The sadomasochism and the age of the children in the videos, that's an enhancement that's applied in 85 percent of cases, Your Honor.  So those factors should not be used to enhance this particular sentence because they are -- they have been across the board.

And Mr. Howard has been seeking out treatment and will continue to and will be deterred at this point, now having been incarcerated for the first time in his life.  He has no prior criminal history.  This has been a very different experience for him than anything else he has ever experienced, and he is going to receive a lengthy sentence.

That's all I have, Your Honor.

THE COURT:  Okay.  Mr. Howard, do you have anything you want to say to the Court?  If you want to

drop your mask, you may.

THE DEFENDANT: Can I get some water?

THE COURT: Yes. Yes. Hold on a second.

While we are waiting on that, have you discussed restitution?

MS. LEO: Your Honor, we're asking if the Court could hold it open for the 90 days because we're trying to talk to the victim's attorney and try to work it out.

THE COURT: Yes. The Court will certainly do that.

MS. LEO: Thank you, Your Honor.

CASE MANAGER: (Tendering water.)

THE DEFENDANT: Thank you. Sorry about that.

THE COURT: That's all right. Go ahead.

THE DEFENDANT: Your Honor, first and foremost, I would like to apologize to the victims and to my family for what I have done. Like Ms. Hughes said, being incarcerated gave me time to think that what I did was something that no one should ever have to go through. Like she said, I was a victim myself. The pain and the -- the pain I went through, no one should ever have to go through.

They say time heals all wounds. This is a wound that can never be healed. Like she said, when it first came to light, I tried to -- I did try to seek therapy, but there

was just not one that was easily available that did not cost phenomenally.

My family did what they could to help me.   I talked -- when I told my doctor what I went through, he did prescribe me antidepressants because I was depressed and I was on the verge of suicide.

I have seeked out psychology services to help me get through what I went through.  They can -- their resources are limited right now, due to the fact that we have gone through COVID.  But I do talk to psychology at least once a week when they come through the unit.  They have gave me resources.  They have gave me workbooks to work and try to fix the broken pieces.

When I get back to FDC Houston, I am going to continue to seek mental health or help with mental health.  At FDC Houston, they do not offer a whole lot due to the fact that they are only a detention center; but they did say that whatever facility I go to, I can sign up for a PTSD support group.  All facilities offer it and it is available to those whose needs -- who fit the need for PTSD help.

I -- as it got closer to my sentencing, I have worked -- I have doubled my effort to get the help I need. Since my -- since I received a blow to the back of the head with a lock, it re-triggered my PTSD and made the

flashbacks and dreams of my childhood abuse worse.  Since I have worked with psychology, it is still frequent but not as frequent.  They said my PTSD is at a moderate high, and they said that it is very uncommon to see in most inmates.

(Sotto voce discussion between counsel and the defendant.)

THE DEFENDANT:  I just want to, again, apologize to the victims; and I will never ever do it again.  That's all I have to say.

THE COURT:  All right.  Thank you, Mr. Howard.

All right.  The Court has considered the guidelines and finds a sentence within the advisory guidelines is consistent with and takes into account all the purposes of 18, United States Code, Section 3553.  It is the judgment of the Court that the defendant, Richard Blake Howard, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 174 months.

Upon release from imprisonment the defendant shall be placed on supervised release for a term of 15 years as an added measure of deterrence and protection given the defendant's background and characteristics.

While on supervised release the defendant shall not commit another federal, state or local crime; shall comply with the standard conditions that have been adopted by

this Court under General Order 2017-01 and abide by any mandatory conditions required by law as well as the following conditions.

The defendant must comply with the requirements of the Sex Offender Registration and Notification Act as directed by probation, The Bureau of Prisons or any state sex offender agency in which he resides, works, is a student or was convicted of a qualifying offense.

The defendant must participate in a sex offense specific treatment program and follow the rules and regulations of that program.  Probation will supervise his participation; and he must pay the costs, if financially able.

The defendant must submit to periodic polygraph testing at the discretion of probation as a means of ensuring that he is in compliance with the requirements of his supervision and treatment programs.

The defendant must not view or possess any visual depiction, including any photograph, film, video, picture or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually-explicit conduct as defined in 18, United States Code, Section 2256.

The defendant must not have direct unsupervised contact with any child he knows or reasonably should know

to be under the age of 18, including any of his own children or family members, without the permission of the probation.  If he does have such contact, he must report that contact to probation within 24 hours.  Direct contact includes written communication, in-person or physical contact.  Direct contact does not include incidental contact during ordinary daily activities in public places.

The defendant must not possess and/or use computers or other electronic communications or data storage devices or media without the prior approval of probation.

If approved, the defendant shall consent to the ongoing monitoring of such devices and must allow probation to conduct initial and periodic unannounced searches of any of those devices.

The defendant must warn other people who use those computers that the computers may be subject to searches pursuant to this condition, and the defendant must agree to pay the cost of the hardware and/or software monitoring system, including any ongoing monthly service costs, in accordance with his ability to pay.

The defendant shall not subscribe to any computer online service nor access any internet service during the length of his supervision unless approved in advance in writing by probation.

The defendant must not possess any internet capable

software on any hard drive, disk, flash drive or any other electronic storage media unless specifically approved in advance in writing by probation.

The defendant must provide probation with access to any requested financial information and authorize the release of any financial information, and probation may share that information with the U.S. attorney's office.

The defendant must not incur new credit charges or open additional lines of credit without approval of probation.

The Court will defer its judgment on restitution for 90 days while I wait to hear from the parties on the possible agreement.

Does the government have a position on the $200 special assessment or the $100 per count special assessment as to whether it should be remitted or not?

MS. LEO:  We'll defer, Your Honor.

THE COURT:  Okay.  The $100 special assessment per count, which is ordinarily assessed against the defendant, will be remitted.  The Court finds the defendant does not have the ability to pay a fine.  So there will be no fine in this case.  And as the defendant is indigent, the JVTA and AVAA assessments are waived.

Having assessed the defendant's ability to pay, payment of total criminal monetary penalties shall be due,

*Laura Wells, RPR, RMR, CRR, RDR*

as follows:

The defendant shall begin payment immediately.  Any unpaid balance due in payments of the greater of $25 per quarter or 50 percent of any wages earned while in prison.  The defendant will receive credit for any payments made through the Bureau of Prisons Inmate Financial Responsibility Program.  Any balance remaining after release from imprisonment shall be paid in monthly installments of $100 to commence 60 days after release to a term of supervision.  Payments are to be made to the United States District Clerk's office, Southern District of Texas in Houston.

The Court has already entered a preliminary notice of forfeiture in February and now gives notice of forfeiture of the following property owned by the defendant:  An Apple iPhone 5, model 1688, and a Dell Latitude 3180 laptop computer.

Yes.

PROBATION OFFICER:  Judge, Nicole Pustejovsky for probation.  The payment schedule that you just read, is it your intention that that payment schedule will apply to the amended judgment when restitution is determined?

THE COURT:  Yes.  Yes.  Thank you.

The 26th?

CASE MANAGER:  Yes.

*Laura Wells, RPR, RMR, CRR, RDR*

THE COURT:  Mr. Howard, you can appeal your conviction if you believe that your guilty plea was unlawful or involuntary or if there is any other fundamental defect in the proceedings that are not waived by your guilty plea.

You also have the statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.  If you do appeal, that appeal must be filed within 14 days of the entry of judgment.  If you cannot afford to pay the cost of appeal, you can ask to proceed without payment of costs.  You also have the right to have an attorney appointed to represent you on appeal if you cannot afford an attorney.

Mr. Howard, I commend you on your efforts to deal with your PTSD to try and keep yourself from re-offending again.  The offenses in this case I believe were serious enough that the upper end of the guideline was the right thing to do.

And I'm glad to hear that you intend to use what is available to you in the Bureau of Prisons to continue the therapy that you have been undergoing, and I hope that it is -- and I hope that you are successful.

You are a young man.  You are going to have a lot of life ahead of you when you get out of prison.  If I were you, I would take advantage of everything in prison that

is available to you so that you can be a productive member of society once you come out.

Anything else?

MS. LEO:  Your Honor, we do have a motion to dismiss Count Two pursuant to the plea agreement.

THE COURT:  All right.  The Court will grant that motion.

MS. LEO:  Thank you.

THE COURT:  All right.  Anything else, Ms. Leo?

MS. LEO:  No, Your Honor.

THE COURT:  Ms. Hughes?

MS. HUGHES:  No, Your Honor.

PROBATION OFFICER:  Your Honor, sorry.

THE COURT:  That's okay.

PROBATION OFFICER:  For the record, we just want to clarify your sentence as there are two counts in this case and the maximum statutory sentence as to Count Two is only 120 months.  So is it your intention that the --

THE COURT:  You are absolutely correct.  It's -- hold on one second.  Let me make sure I have that.  I know what you are getting at, and I am glad you brought it up.

All right.  The Court's sentence is 174 months as to Count One and 120 months as to Count Three to run concurrently for a total of 174 months; and on supervised release it is 15 years as to each of Counts One and Three

to run concurrently for a total of 15 years.

Does that clear it up?

PROBATION OFFICER:  Thank you, Judge.

THE COURT:  Thank you.  All right.  Court stands in recess.

THE MARSHAL:  All rise.

(Proceedings concluded at 11:36 a.m.)

*Date:  November 28, 2022*

### COURT REPORTER'S CERTIFICATE

*I, Laura Wells, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*

_____/s/ Laura Wells_____

*Laura Wells, CRR, RMR*